In re Petition of Harry White for Specific Performance of Contracts with James McCracken, Deceased, for Purchase of Real Estate. Appeal of Jennie McC. Daugherty.

*Payment — Appropriation payments — Executors and administrators —Trusts and trustees.*

When an executor receives money in his trust capacity from a person who is indebted to the estate and also indebted to the executor personally, the executor may, in case the debtor had not exercised his prior right, avail himself of the power to apply the payment. But he must make the application to the debts that are held in the same right in which he has received the money. He must apply the money to the extinguishment of the debts due the estate. In case neither of the parties have made any application of the payment to a particular debt, the law will apply the payment to the items which are oldest or least secure, but it will apply it to the payment of the debts due the estate, for the law will not direct, nor will it permit, money paid into an estate upon account of the debts of an individual to be taken out, leaving the debts unpaid, in order that the individual claims of an executor or some other person may be made more secure. Where the executor has begun to receive money as executor he must be presumed to have continued to receive in that capacity until it is shown that there had been a change in the arrangement.

*Amendment—Petition for specific performance—Executors and administrators—Orphans' court.*

Where a person, who is an executor with power to make deeds for lands sold by testator in his lifetime, files in his individual name in the orphans' court a petition for specific performance, in which he sets out contracts of sale made by the testator to the decedent, and also contracts of sale which the petitioner individually had made to the decedent, and evidence is taken as to the contracts made by the testator, and such contracts are not denied, the petitioner may subsequently be permitted to amend the record by substituting his name as executor for his own name, individually, and by striking out all reference to the contracts which he had made individually with the decedent.

Argued May 1, 1899. Appeal, No. 87, April T., 1899, by Jennie McC. Daugherty, from decree of O. C. Indiana Co., March T., 1890, No. 72, on petition for specific performance. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Decree modified. Opinion by W. D. PORTER, J.

Petition for specific performance.  Before BARKER, P. J., of the 47th judicial district, specially presiding.

The facts are fully stated in the opinion of the court.

*Errors assigned* among others were (1–3) in permitting the amendment of the petition.   (4) In its decree.   (6–8) In not dismissing the petition.

*D. B. Taylor*, with him *S. M. Jack*, for appellant.—Under the acts authorizing amendments, notice to the adverse party is regarded as necessary : Richards v. Rote, 68 Pa. 248 ; Com. v. The Judges, 4 Pa. 301.

A record can be amended only where there is something to amend by : Bennett v. Hayden, 145 Pa. 586.

If there never was a prior application, the petitioner appropriated the credits when he filed his petition March 21, 1890 : Garrett's App., 100 Pa. 597.

*J. N. Banks*, for appellee.—The court having the matter before it could mold a decree to reach the justice of the case without any preliminary motion to amend : Schuey v. Schaeffer, 130 Pa. 16 ;  Ross v. Johnson, 5 Burr, 2825 ;  Danzeisen's App., 73 Pa. 65 ;  Postlethwaite's App., 68 Pa. 477.

Under the Act of April 16, 1845, P. L. 353, amendments can be made at " any stage of the proceedings : "  Ganzer v. Fricke, 57 Pa. 316 ;  Adams v. Edwards, 115 Pa. 211.

OPINION BY W. D. PORTER, J., March 21, 1900 :

This is a proceeding, under the 15th section of the Act of February 24, 1834, P. L. 70, to enforce the specific performance of five contracts for the sale of real estate.   The proceeding was begun by Harry White presenting his individual petition, setting forth that Hon. Thomas White had during his lifetime entered into two agreements in writing, dated, respectively, December 28, 1864, and February 5, 1866, with James McCracken, for the sale and conveyance of two lots of land on the south of the borough of Indiana ; copies of the agreements attached to the petition accurately describe the land : that Hon. Thomas White died July 22,1866, after having made his last will and testament, wherein he appointed the said Harry White executor thereof,

giving him full power to make and execute deeds for all contracts made by the testator for sales of real estate in his lifetime which were not executed at the date of his death; that Harry White in his individual capacity had entered into three articles of agreement with said James McCracken, dated, respectively, September 9, 1867, October 22, 1866, and December 1, 1867, each of said agreements being for the sale and conveyance by White and purchase by McCracken of a lot of land described, respectively, in the agreements attached to the petition. The petition alleged that the purchase money had not been paid upon these lots, and prayed that the balance due thereon be ascertained and decreed, and a specific performance of the contracts be adjudged. The respondents moved to dismiss the petition, and considerable doubt seems to have arisen as to whether the petition in its original form could stand. The source from which this doubt arose is difficult to comprehend. The jurisdiction of the court and the authority for proceeding in this manner were purely statutory, and, entirely apart from the question as to the right to maintain the proceeding when the vendor is living, there is certainly nothing which could warrant the court in entertaining jurisdiction in the same proceeding of different contracts held by two or more estates, or by an estate and an individual living, simply because the grantee happens to be the same person, while the several estates or individuals have no community of interest in any one of the contracts. The mere fact that the individual who has a contract which he desires to have enforced is the executor of an estate which also has a contract that it would be advantageous to enforce does not affect the rights under either of the contracts, and the proceeding is to be governed by the same rule which would prevail if the executor and the indivdual were different persons.

The petition and proceedings were amended upon the motion of the petitioner by permitting Harry White, executor of the last will and testament of Thomas White, to be substituted as petitioner, and striking out Harry White individually as a party, and also striking out all reference to the three contracts made by Harry White with McCracken. The proceeding thus became one by the executor of Thomas White, deceased, to enforce the specific performance of the two contracts made by Hon. Thomas White and James McCracken, both now deceased. This put

the record in proper form, and, as the parties seem to have had a full opportunity to present all their evidence, we are not satisfied that they were placed at any disadvantage in the presentation of these proofs upon the merits. The petition as originally presented set forth the facts as to the two contracts made with Hon. Thomas White, and there could have been no question as to the nature of the obligation which was to be enforced. The executor had not at that time become a party to the proceeding, and as the record then stood no decree could have been entered in his favor, for the petition did not set forth what the interest of Harry White as an individual was which would entitle him to seek a specific performance of these two contracts ; but the execution of the instruments was not denied, and the respondents put in all the evidence of payment which they had and all which they now assert that they could have produced. There was, therefore, no impropriety in allowing the amendment and, as the amendment cured the defects in the original petition, the assignments of error based upon the overruling of the motion to dismiss it, because of formal defects, have ceased to have anything upon which to stand. The first, second, third, sixth and seventh specifications of error are dismissed.

The estate of Hon. Thomas White being safely solvent, and there being no distributees to complain, those who were to receive money from the estate were perfectly safe in any event. It is not remarkable, therefore, that we find this statement in the paper-book of the appellee, on page 4 of his counter-statement: " Harry White, who individually sold lots to McCracken, being the same person who was executor of Thomas White, who had sold the lots ten and twelve that were still unpaid for, the calculation of the balances owing were naturally run together." The executor mingled the funds of the estate with his own. The accounts of the estate against individuals and the individual accounts of the executor against the same persons were involved in confusion. The calculation submitted by the appellee as to the amounts due upon the various contracts of McCracken, as printed in appellant's paper book, shows that after a certain period the personal claims of the appellee and the claims of the estate of Thomas White against McCracken were carried as a common account, and showed but one balance owing by McCracken, without indicating whether to the

estate of Hon. Thomas White or to the appellee upon personal account. There was no impropriety in this so far as the persons who were to receive money from the estate of the Hon. Thomas White were concerned, but, as an incident of it, the accounts became involved in obscurity. This obscurity has occasioned all the trouble in this case. The petitioner, when he began this proceeding, was himself the victim of this obscurity, and so if there be error in this case it is because the learned court below lost sight of the fact that there was a distinction between the property of Harry White and that of Harry White, executor of the will of Thomas White.

The two contracts which remained for the consideration of the court after the amendment of the record were exhibit " B," an agreement made February 5, 1866, between Thomas White and James McCracken, by which White agreed to sell and convey to McCracken lot No. 12 in a plan laid out by him, and McCracken agreed to pay for said lot the sum of $300 at the time set forth in the agreement; and exhibit " C," an agreement dated December 28, 1864, between Thomas White and James McCracken, by which White agreed to sell and convey to McCracken lot No. 10 in plan laid out by him, and McCracken agreed to pay therefor the sum of $275. Lot No. 10 was sold by McCracken to Sebring, and the deed was executed directly by Harry White, executor of Thomas White, to Mrs. Sebring. We have, therefore, only to do with that lot in so far as the balance then unpaid upon it would affect the amount applicable to the other lot, as resulting from subsequent payments. On January 1, 1867, the amount due on lot No. 10, was $60.52, and the amount due on lot No. 12, on June 27, 1868, was $157.29. The legal title to both of the lots, 10 and 12, was in the estate of Thomas White. The appellee sets forth in his petition, "and that with the consent of the said Harry White the said McCracken sold lot No. 10 about June 1, 1872, to Elizabeth Sebring, for the sum of $350. All of which purchase money was to be paid to the said Harry White when it became due." Elizabeth Sebring paid to the appellee $200 on June 13, 1872, and on July 23, 1875, she paid $171.28. The learned court below has found that neither of the parties designated the debt to which these payments by Mrs. Sebring should be applied, at the time the payment was made. At the time of the hearing the respon-

dents submitted a calculation applying this to lot No. 12; the appellee submitted a calculation applying this in part to lot No. 12 and in part to the debts due him individvally. In that he added all the debts due the estate and all the debts due himself together, and then deducted the payment. What other application of this payment upon the part of the creditor may have been presented to the court below, there is nothing in the record which will enable us to ascertain. But the opinion indicates that such an application was subsequently submitted which applied these payments entirely to the debts due Harry White in his individual capacity, and this application the court below sustained. The general theory of the law with regard to the application of payments has been most ably and correctly set forth by the learned judge of the court below in his opinion. In the application of the principles, however, to the case in hand, he seems to have been misled into a failure to discriminate between the trust property of which the executor had control and his individual contracts, with which the estate had nothing to do. This was, no doubt, the result of the confusion of property which permeates this whole case. In June, 1872, the estate of Thomas White, of which Harry White was the executor, held the legal title to lot No. 10, upon the sale of which there was still purchase money unpaid. James McCracken held the equitable title to that lot and had an opportunity to make a sale. The appellee has said in his petition that he consented to that sale. That means an agreeing together. He had no power to agree or to consent save as the executor of the will of Thomas White, deceased. When McCracken, therefore, approached him with regard to that matter, he was dealing with the executor of the will of Thomas White; he was dealing with regard to property in which the estate of Thomas White had an interest; he was dealing with the executor of an estate to which he was indebted, not only on account of that lot, but on account of another lot. The transaction contemplated a conveyance of the lot to Mrs. Sebring, which could only be executed by the executor of the estate of Thomas White. When they agreed, therefore, that McCracken should sell the lot to Mrs. Sebring and that she should pay the money to the appellee, the appellee must be presumed to have received the money in the capacity in which he was then dealing. Having received

the money as the executor of Thomas White, for the account of James McCracken, if McCracken did not direct which debt it should be credited upon, then the appellee had power to apply it upon any debt of McCracken due the estate of Thomas White, but he had no right to apply any portion of it to a debt due to himself until all the debts of James McCracken to the estate of Thomas White had been extinguished.

When an executor receives money in his trust capacity from a person who is indebted to the estate and also indebted to the executor personally, the executor may, in case the debtor had not exercised his prior right, avail himself of the power to apply the payment. But he must make the application to the debts that are held in the same right in which he has received the money. He must apply the money to the extinguishment of the debts due the estate. In case neither of the parties have made any application of the payment to a particular debt, the law will apply the payment to the items which are oldest or least secure, but it will apply it to the payment of the debts due the estate, for the law will not direct, nor will it permit, money paid into an estate upon account of the debts of an individual to be taken out, leaving the debts unpaid, in order that the individual claims of an executor or some other person may be made more secure. The appellee having begun to receive this money from Mrs. Sebring as the executor of Thomas White, and she having begun to pay for the purpose of freeing her lot from a lien for purchase money, he must be presumed to have continued to receive in that capacity until it was shown that there had been a change in the arrangement. If, after Mrs. Sebring had paid an amount equal to the unpaid purchase money upon her lot, the parties had agreed that future payments should be credited upon some other account, or if the appellee had notified McCracken that he would cease to receive it as the executor of Thomas White, there might have been merit in the contention of the appellee, but we have no suggestion of anything of this kind. The payments made by Mrs. Sebring must be credited upon the contracts B and C. The fourth assignment of error is sustained.

The first payment of $200 was made by Mrs. Elizabeth Sebring on June 13, 1872.

| | |
|---|---:|
| Balance owing on lot No. 10, January 1, 1867 . | $60.52 |
| Interest to June 13, 1872     .    ..    .    . | 19.67 |
| | $80.19 |
| | |
| Mrs. Sebring paid June 13, 1872     .    .    . | $200.00 |
| Balance owing on lot No. 10, interest, etc.    . | 80.19 |
| Balance to be applied on lot No. 12 .    .    . | $119.81 |
| | |
| Amount due on lot No. 12, June 27, 1868    . | $157.29 |
| Interest to June 13, 1872 .    .    .    .    . | 37.37 |
| | $194.66 |
| | |
| Amount due on lot No. 12 June 27, 1868    . | $194.66 |
| Interest to June 13, 1872 .    .    .    .    . | 119.81 |
| Balance to be applied to lot No. 12    .    . | $74.85 |
| Interest to July 23, 1875    .    .    .    . | 13.97 |
| | $88.82 |
| | |
| Mrs. Sebring paid July 23, 1875    .    .    .. | $171.28 |
| Balance due on lot No 12    .    .    .    . | 88.82 |
| Amount overpaid estate of Thomas White, dec'd | $82.46 |

In the calculation submitted by the petitioner, and printed in appellant's paper-book, it is stated that Mrs. Sebring made her last payment and got her deed on July 23, 1875. This paid more than was due from McCracken to the estate of Hon. Thomas White, deceased, and left a balance of $82.46 to be appropriated to the indebtedness due Harry White individually, and as there is no evidence that McCracken ever demanded this money he must, after the lapse of all this time, be presumed to have acquiesced in the appropriation of the amount to the indebtedness due Harry White individually. The action of the court below in decreeing a specific performance was unquestionably correct, and the decree must be modified only in so far as the amount to be paid by the respondents is concerned.

The decree is, therefore, modified. And now, March 21, 1900, specific performance of the contract between Thomas White, deceased, and James McCracken, deceased, dated February 5, 1866, filed in these proceedings and marked petitioner's exhibit " B," is decreed according to the true intent and meaning

thereof.  And it is further adjudged that the purchase money upon said contract has been paid in full.  And it is ordered, adjudged and decreed that Harry White, executor of Thomas White, deceased, shall execute and deliver to Jennie Daugherty, her heirs and assigns, a good and sufficient deed in fee simple for the land described in said agreement, to wit: " That certain out-lot of land on the south side of the borough of Indiana, bounded on the south by lane, west by a fifteen-foot alley, and north by out-lot number four (4), being out-lot number twelve (12) in the plan of lots laid out by the said Thomas White and recorded in the recorder's office of Indiana county on the 20th day of June, A. D. 1864 "; and it is ordered that the costs in the court below and upon this appeal be paid by the appellee.